IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MATTHEW CERVANTEZ, individually and on behalf others similarly situated under 29 U.S.C. § 216(b), | § § § § | |
| Plaintiff, | § § | |
| V. | § § | No. 3:18-cv-2547-S-BN |
| TDT CONSULTING, LLC, | § § | |
| Defendant. | § § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States magistrate judge for pretrial management under 28 U.S.C. § 636(b) and a standing order of reference from United States District Judge Karen Gren Scholer. *See* Dkt. No. 20.

Plaintiff Mathew Cervantez (represented as Matthew Cervantez in the Complaint), individually and on behalf of those similarly situated, brought this putative collection action under 29 U.S.C. § 216(b), a provision of the Fair Labor Standards Act, 28 U.S.C. § 206, *et seq.* (the "FLSA"), to recover minimum wages, overtime pay, liquidated damages, attorneys' fees, and costs. *See* Dkt. No. 1 at 1.

Cervantez now moves for conditional certification, *see* Dkt. No. 10, to which Defendant responded to and filed an Objection, *see* Dkt. No. 12, and in support of which Cervantez filed a reply, *see* Dkt. No. 15.

For the reasons below, the Court should overrule Defendant's Objection [Dkt.

No. 12] and grant in part and deny in part Plaintiff's Motion for Expedited Conditional Certification of Collective Action and Judicially-Supervised Notice Under Section 216(b) [Dkt. No. 10].

### Background

Plaintiff Mathew Cervantez alleges that, from May 2018 to August 2018, Defendant TDT Consulting, LLC employed Cervantez as a solids control technician. *See* Dkt. No. 10 at 4. TDT Consulting "employs approximately 20-25 other solids control technicians" and staffs these workers as consultants with other businesses "for drilling fluids, waste management, solids control, under balance drilling[,] and managed pressure drilling in the oil and gas industry." *Id.*

Cervantez worked as a solids control technician, which involved "process[ing] the cutting[s] that come[] out of the ground during the drilling process at oil rigs." *Id.* Cervantez contends that he and other solids control technicians were required, "at the direction and instruction of TDT Consulting, LLC," to use TDT Consulting's tools and equipment to "remove, clean, measure, load, and transport cuttings, as well as maintain and clean the equipment used to remove the cuttings during the drilling process." Dkt. No. 10 at 4; Dkt. No. 1 at 5. Additional responsibilities that the technicians were assigned, Cervantez contends, included "being responsible for maintaining [TDT Consulting's] solid control equipment, the rigging up and out of company equipment at the client's well-site/jobsite, dewatering, and centrifuge support," as well as the task of "complet[ing] and submit[ting] ... daily field reports with information, such as the work performed, personnel information, and [the] cost of the

-2-

job performed at the client's well-site/jobsite." *Id*.

According to Cervantez, the day-to-day activities were "labor intensive" and involved "their hands, physical skills, and energy, to perform the task[s]"; did not "include managerial responsibilities or the exercise of independent discretion" or the ability to "hire or fire"; and were "designed within parameters and in accordance with [TDT Consulting's] operational plans...." Dkt. No. 1 at 5-6.

Cervantez asserts that he "and the other solids control technicians were paid" a "daily rate of $350, regardless of the hours worked and the time spent driving to and from jobsite." Dkt. No. 10 at 4. He contends that he "and other solids control technicians worked twelve (12) or more hours in a single day for a period of up to fourteen (14) consecutive days in a row." *Id*. Cervantez reports that there were frequent trips of "150 miles to and 150 from client's jobsites" for which technicians were only given a milage reimbursement. *Id*.

Cervantez asserts that TDT Consulting misclassified the solids control technicians as independent contractors instead of employees, and did not compensate him and the other solids control technicians "for any hours worked in excess of forty (40) per week – including time spent driving" despite regularly working more than forty hours in single workweek. Dkt. No. 10 at 4; Dkt. No. 1 at 7. He argues that they were not paid for these hours work and were not paid at the correct rate of "one-and-one-half times their regular rate" under the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201-19 ("FLSA"), for the hours worked in excess of 40 per week. *See* Dkt. No. 1 at 1-2.

Cervantez brings this lawsuit as a putative collective action under 29 U.S.C. § 216(b). *See id*. He seeks conditional certification, permission to provide potential class members with notice, and a Court decision tolling the statute of limitations for additional plaintiffs to opt in from the date that the motion for conditional certification was filed. *See* Dkt. 10 at 1-17.

### Legal Standards

In evaluating a conditional certification, the FLSA provides:

> An action ... may be maintained ... by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Unlike class actions brought under Federal Rule of Civil Procedure 23, classes under Section 216(b) are opt-in classes, requiring any employee wishing to become a party to the action to "opt in" (rather than "opt out") by filing his consent with the court in which the action is brought. *See id*.

Although the United States Court of Appeals for the Fifth Circuit has not adopted a specific standard to be used in determining the propriety of class certification under the FLSA, it has affirmed at least two approaches. *See Portillo v. Permanent Workers, L.L.C.*, 662 F. App'x 277, 279 & n.10 (5th Cir. 2016). The first approach, which tracks Rule 23, entails district courts' evaluating FLSA collective actions against the well-established requirements of numerosity, commonality, typicality, and

adequacy. *See id.* The second is the "*Lusardi* approach," named for an opinion describing a two-stage certification process consisting of a notice stage and a certification stage. *See id.* (citing *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987)).

The undersigned follows the *Lusardi* approach as the legal standard for collective action certification. *See* Dkt. No. 23 at 3; *Portillo*, 662 F. App'x at 280 & n.14; *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916 n.2 (5th Cir. 2008); *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-16 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2013)); *see also Lee v. Metrocare Servs.*, 980 F. Supp. 2d 754, 758 (N.D. Tex. 2013) (recognizing and applying two-stage test as prevailing test among federal courts); *Valcho v. Dallas Cnty. Hosp. Dist.*, 574 F. Supp. 2d 618, 621 (N.D. Tex. 2008) (noting that the Northern District of Texas federal courts apply the two-stage test "that prevails among federal courts").

During the notification stage,

the plaintiff moves for conditional certification of his or her collective action. The district court then decides, usually based on the pleadings and affidavits of the parties, whether to provide notice to fellow employees who may be similarly situated to the named plaintiff, thereby conditionally certifying a collective action.

*Portillo*, 662 F. App'x at 280 (quoting *Sandoz*, 553 F.3d at 921 n.2). The plaintiff must establish that there are other potential class members who are "similarly situated in their job requirements and pay provisions." *Marshall v. Eyemasters of Tex., Ltd.*, 272 F.R.D. 447, 449 (N.D. Tex. 2011) (internal quotations omitted). If a court is satisfied that a plaintiff has satisfied this test, the Court may, in its discretion, decide to

conditionally certify the class and facilitate notice of the lawsuit to potential class members. *See Valcho*, 574 F. Supp. 2d at 621-22.

Because plaintiffs seeking conditional certification need not identify other hypothetical collective action members, the stage one standard is considered to be "fairly lenient. "*Portillo,* 662 F. App'x at 282. The decision whether to conditionally certify "'lends itself to *ad hoc* analysis on a case-by-case basis,'" but the Court typically grants certification. *Id.* (quoting *Mooney*, 54 F.3d at 1214). Once conditional certification is granted, "'notice of the action should be given to potential class members,'" allowing them the opportunity to "opt-in" to the collective action. *Id.* (quoting *Mooney*, 54 F.3d at 1214); 29 U.S.C. § 216(b).

At the certification stage, the Court determines whether the class should be maintained through trial. *See Mooney*, 54 F.3d at 1214. This stage typically begins when the defendant moves to decertify the class after discovery is largely complete. *See id.* The collective action will proceed if the court finds the potential class members similarly situated, but the class will be decertified if discovery fails to adequately identify a pool of claimants that is similarly situated. *See id.*; *see also Proctor v. Allsups Convenience Stores, Inc.*, 250 F.R.D. 278, 280 (N.D. Tex. 2008) ("At this second stage, the burden is on the Plaintiff to prove that the individual class members are similarly situated.").

At this stage, courts are much less likely to allow the collective action to continue to trial. *See Portillo*, 662 F. App'x at 281. The court may consider: "(1) the

disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to [defendant] which appear to be individual to each plaintiff; [and] (3) fairness and procedural considerations." *Id.* (internal quotation marks omitted).

## Analysis

The Court should overrule Defendant's Objection [Dkt. No. 12] and grant in part and deny in part Plaintiff's Motion for Expedited Conditional Certification of Collective Action and Judicially-Supervised Notice Under Section 216(b) [Dkt. No. 10].

## I.     Defendant's Objection

Turning first to TDT Consulting's Objection filed in response to Cervantez's motion for conditional certification, *see* Dkt. No. 12-1 at 1-10, TDT Consulting objects to a number of statements in the Cervantez's declaration based on hearsay, conclusory statements, and a lack of personal knowledge under Federal Rules of Evidence 601, 602, and 801. *See* Dkt. No. 12 at 1-9.

Cervantez counters that, while evidence must be based on personal knowledge at the notice stage of certification, he is not required to present evidence in a form that would be admissible at trial. *See* Dkt. No. 15 at 1-13.

Courts in this district and beyond have held that "[p]laintiffs need not present evidence in a form admissible at trial at the notice stage." *Lee*, 980 F. Supp. 2d at 761; *Nguyen v. Versacom, LLC*, No. 3:13-CV-4689-D, 2015 WL 1400564, at *3 (N.D. Tex. Mar. 27, 2015) ("Because motions for conditional certification are typically made when discovery is in its early stages, and are not dispositive motions, many courts –

including this one – have held that affidavits or declarations offered in support of motions for conditional certification need not be based on evidence that would be admissible at trial."). "To require more at this stage of litigation would defeat the purpose of the two-stage analysis." *White v. MPW Indus. Servs., Inc.*, 236 F.R.D. 363, 368 (E.D. Tenn. Mar. 21, 2006). Accordingly, the undersigned recommends that the court overrule TDT Consulting's hearsay objections.

But, although "affidavits in support of motions for conditional certification need not meet all evidentiary standards for admissibility at trial," that "does not mean that such affidavits need not meet any standards. On the contrary, affidavits submitted at the notice stage must be based on the personal knowledge of the affiant." *White*, 236 F.R.D. at 369; *see Dooling v. Bank of the W.*, No. 4:11-cv-576, 2012 WL 2417591, at *4 (E.D. Tex. June 26, 2012), *rep. & rec. adopted*, 2012 WL 2921370 (E.D. Tex. July 17, 2012) (noting the need for a declaration to be based on personal knowledge, even in the conditional certification stage); *Owen v. Golf & Tennis Pro Shop, Inc.*, No. 4:09-cv-571, 2010 WL 3859640, at *4 (E.D. Tex. Sept. 30, 2010), *motion for relief from judgment granted*, 2010 WL 3941842 (E.D. Tex. Oct. 7, 2010) (holding that declarations that lack personal knowledge "do not suffice even under the lenient *Lusardi* standard").

TDT Consulting asserts that "Cervantes has not demonstrated any personal knowledge" as to whether other solids control technicians (1) were independent contractors; (2) "work[ed] long hours in excess of forty (40) hours per work week and frequently drove more than 150 miles to and 150 miles from TDT's client's well-

site/jobsite"; (3) "were paid for all [their] work, including overtime hours and the hours worked after hours"; (4) "did not receive compensation for all [their] miles"; (5) were tasked with "completing and submitting to TDT daily field reports"; (6) were not compensated for "all the hours" worked; (7) "received overtime compensation"; (8) "had the same experience with TDT in terms of job duties and responsibilities, pay structure, and assignments"; (9) "would join a collective action"; (10) received communication via "email, phone call, and text messaging" from TDT Consulting, LLC; (11) were assigned jobs via text message; (12) are "required to work 14[] days on and 7[] days off"; and (13) would "be away from home for long periods of time." Dkt. No. 11 at 1-7; Dkt. No. 12 at 1-9.

Cervantez argues that he has met the personal knowledge requirement by "providing sufficient facts" to show that his "declaration and statements therein are based on his personal knowledge." Dkt. No. 15 at 3. He argues that he "based his declarations on his own observations and conversations with his fellow co-workers employed as solids control technicians, during which they discussed their employment with [TDT Consulting, LLC], including their compensation, work schedules, and job duties." *Id*. at 4. In addition to his own observations, he asserts that he has personal knowledge from "the large number of hours spent working with the other solids control technicians." *Id*. at 5.

The undersigned finds sufficient evidence and case law authority to support the determination that Cervantez's declaration is based on personal knowledge. All of TDT Consulting's objections as to personal knowledge are, in fact, "nested" hearsay

objections, since the objected-to information was obtained through conversations with Cervantez's colleagues. Courts admit such hearsay evidence at the conditional certification stage and have found affiants to have personal knowledge of information they obtained from observations and conversations with their colleagues. *See McCloud v. McClinton Energy Grp., L.L.C.*, No. 7:14-cv-120, 2015 WL 737024, at *4 (W.D. Tex. Feb. 20, 2015) (holding that discussions with co-workers about compensation was "sufficient to show personal knowledge of compensation structures"); *Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 514 (W.D. Tex. 2015) ("The Court finds [the plaintiff's] testimony that he acquired knowledge of [the defendant's] practices by way of his own employment with the company, as well as specifically inquiring of other workers concerning their experiences, a sufficient showing of a widespread discriminatory plan."); *Contreras v. Land Restoration LLC*, No. 1:16-CV-883-RP, 2017 WL 663560, at *4-*5 (W.D. Tex. Feb. 17, 2017) ("Whether framed in terms of 'personal knowledge' or not, the acceptance of hearsay at the conditional certification stage is widespread in Texas.").

In *Tolentino v. C & J Spec-Rent Servs. Inc.*, the court referred to an example in which three employees' declarations stated that they had "ha[d] personal knowledge that [the hundreds of] employees of the defendant who worked in the field as operators were paid fixed salaries, regardless of the number of hours worked, and were never paid any overtime wages for [hours] worked in excess of 40 per week, at least through the end of 2008" and held that this evidence in the declarations was "ideal for analysis

-10-

of whether 'the putative class members were together the victims of a single decision, policy, or plan.'" 716 F. Supp. 2d 642, 649 (S.D. Tex. 2010) (quoting *Morales v. Thang Hung Corp.*, 2009 WL 2524601, at *2 (S.D. Tex. Aug. 14, 2009)).

The outer limits on courts' findings of adequate personal knowledge is evident in *Dooling*, in which the court found that the plaintiff had not met the personal knowledge threshold because she failed to show how she obtained the information about how "other employees' overtime was calculated." 2012 WL 2417591, at *4. Cervantez's motion is distinguishable as he freely attests that he obtained this information from his conversations with his workers. Dkt. No. 15 at 4.

The undersigned finds the facts here more akin to those in *Tolentino* than *Dooling* and recommends that the Court overrule TDT Consulting's personal knowledge objections.

TDT Consulting's final objection is to an allegedly conclusory statements in Cervantez's declaration. TDT Consulting argues that his "conclusory statements are inappropriate evidence" and should therefore be stricken. Dkt. No. 12 at 6.

The undersigned finds the *Lee* court's rationale on conclusory statements persuasive on this issue, in which it noted that "at this stage, the objections raised by [the defendant as to conclusory statements] go to the weight of the evidence, and not its admissibility." 980 F. Supp. 2d at 762. And, more importantly, each of TDT Consulting, LLC's conclusory objections here are not independent objections; they are the result of either a lack of personal knowledge or inadmissible hearsay objection. *See*

-11-

*e.g.* Dkt. 12 at 2 ("Mr. Cervantez makes it clear that the basis for his 'personal knowledge' is the alleged statements made by other[s] outside of [the] court, i.e. inadmissable hearsay, and thereby, such is a [sic] conclusory statement.").

Because the Court should overrule the personal knowledge and hearsay objects, there is no basis to sustain conclusory statement objection, and the Court should overrule the final category of TDT Consulting's objections.

## II.    Motion for Expedited Conditional Certification

Cervantez seeks to represent "all current and former consultants or solids control technicians who are or were classified by TDT Consulting, LLC as independent contractors while performing work for TDT Consulting, LLC within three [] years preceding the filing of this lawsuit through the disposition of this matter." Dkt. 10 at 2.

TDT Consulting, LLC argues that the motion fails because Cervantez fails to proffer evidence on the desire of putative class member to opt in and because all statements as to the putative class are either hearsay, conclusory, or lack personal knowledge. *See* Dkt 12 at 8. TDT Consulting asserts that none of the evidence supporting conditional certification is admissible and that Cervantez fails to satisfy the three elements necessary under *Walker v. Hongua Am, LLC*, 870 F. Supp. 2d 462, 465 (S.D. Tex. 2012). *See id.*

Cervantez asserts that his proffered statements are not hearsay, conclusory, or lacking in personal knowledge and that many courts in the Fifth Circuit have abandoned the "desire to opt in" requirement for conditional certification. *See* Dkt. No.

15 at 10-13.

Under the *Lusardi* two-step approach, Section 216(b) certification is divided into two phases: (1) the notice or notification stage and (2) the merits or merits stage. *Mooney v. Aramco.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995). In the notification stage, the Court must determine whether the plaintiff has provided sufficient evidence of similarly-situated plaintiffs to warrant court-facilitated notice of the proposed class. *See Valcho v. Dallas Cnty. Hosp. Dist.* 574 F. Supp. 2d 618, 621 (N.D. Tex. 2008).

But – in addition to the split within the United States Court of Appeals for the Fifth Circuit between the *Lusardi* and *Shushan v. University of Colorado*, 132 F.R.D. 263, 266-67 (D. Colo. 1990) (the Rule 23-style) class certification approaches – there is further division among courts as to how to decide "similarly situated" under *Lusardi*'s notification stage. Courts have adopted two approaches. In the first, "courts use three elements, requiring the plaintiff to show that: (1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." *Morales*, 2009 WL 2524601, at *2; *see Tolentino*, 716 F. Supp. 2d at 647; *McCloud v. McClinton Energy Grp., LLC*, No. 7:14-cv-120, 2015 WL 737024 at *3 (W.D. Tex. Feb. 20, 2015); *Dooling*, 2012 WL 2417591 at *3; *Lee*, 980 F. Supp. 2d at 765-66; *Nguyen*, 2015 WL 1400564 at *8; *Crane v. J & M Communications, Inc.*, No. 3:16-cv-2855-L-BH, 2017 WL 2882593, at *4 (N.D. Tex. July 6, 2017); *Bewley v. Accel Logistics, Inc.*, No. 3:17-CV-0676-S-BK,

2018 WL 2422043, at *2 (N.D. Tex. May 7, 2018), *rep. & rec. adopted*, 2018 WL 2416574 (N.D. Tex. May 29, 2018).

In the second approach, courts adopt a generalized approach to the first two elements noted in *Morales* but reject the third, non-statutory element. *See Abeldano v. HMG Park Manor of Westchase, LLC*, No. CV H-16-1044, 2016 WL 5848890, at *6 (S.D. Tex. Oct. 6, 2016); *Contreras v. Land Rest. LLC*, No. 1:16-cv-883-RP, 2017 WL 663560, at *6-7 (W.D. Tex. Feb. 17, 2017); *Jones v. Cretic Energy Servs., LLC*, 149 F. Supp.3d 761, 768 (S.D. Tex. 2015); *Dreyer v. Baker Hughes Oilfield Operations, Inc.*, No. H-08-1212, 2008 WL 5204149, *3 (S.D. Tex. Dec. 11, 2008); *Frazier v. Dallas/Fort Worth International Airport Bd.*, 285, F. Supp. 3d 969, 973 (N.D. Tex. Jan. 17, 2018); *Porter v. Speciality Rescue & Fire Service, LLC*, No. 3:18-cv-2584, 2019 WL 1403408, at *2 (N.D. Tex. Mar. 27, 2019). They note that such an approach is "consistent with the instruction from the Supreme Court [in *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985),] that the FLSA be liberally construed to carry out its purpose" and that it is therefore "enough for Plaintiffs to present evidence that there may be other aggrieved individuals who should be noticed without requiring evidence that those individuals actually want to join the lawsuit." *Abeldano*, 2016 WL 5848890, at *6.

The undersigned has followed the two-factor trend of the "similarly situated" determination, *see Ecoquij-Tzep v. Hawaiian Grill*, No. 3:16-cv-625-BN, 2017 WL 2672328, at *1 (N.D. Tex. June 21, 2017), while Judge Scholer has followed the three-

factor analysis in the first trend, *see Solis v. Baylor Scott & White Health Care, N. Texas Div.*, No. 3:17-cv-637-S, 2018 WL 4076484, at *7 (N.D. Tex. July 16, 2018); *Bass v. City of Dallas*, No. 3:17-cv-3330-S, 2019 WL 1864958, at *4 (N.D. Tex. Apr. 24, 2019).

But Cervantez has met the burden of showing that the putative class members are "similarly situated" under either of the two standards, and the Court should grant Cervantez's motion.

### A.    Existence of Aggrieved Individuals

Cervantez has shown that a reasonable basis exists to believe that aggrieved individuals exist in the instant motion.

Cervantez asserts that he worked as a solids control technician and that TDT Consulting "employs approximately 20-25 other solids control technicians." Dkt. No. 10 at 4. Cervantez avers that, as solids control technicians, he and his co-workers worked to "remove, clean, measure, load, and transport cuttings, as well as maintain and clean the equipment used to remove the cuttings during the drilling process." *Id.*; Dkt. No. 1 at 5. And, he argues, they were also "responsible for maintaining [TDT Consulting, LLC's] solid control equipment, the rigging up and out of company equipment at the client's well-site/jobsite, dewatering, and centrifuge support," as well as the task of "complet[ing] and submit[ing] … daily field reports with information, such as the work performed, personnel information, and [the] cost of the job performed at the client's well-site/jobsite." *Id*.

Having had conversations with and worked alongside theses other solids control

-15-

technicians for a "large number of hours," Cervantez contends that these co-workers are aggrieved individuals as they, too, not only performed the same tasks but also "worked twelve (12) or more hours in a single day for a period of up to fourteen (14) consecutive days in a row" for a daily rate of $350; were not compensated for "any hours worked in excess of forty (40) per week – including time spent driving," despite regularly working more than forty hours in single workweek; and "not paid at the correct rate of "one-and-one-half times their regular rate" under the FLSA because of TDT Consulting, LLC's common plan to "misclassif[y] solids control technicians as independent contractors instead of employees." Dkt. No. 1 at 1-2; Dkt. No. 10 at 4-5.

"These allegations are sufficient to demonstrate that 'it is reasonable to believe that there are other aggrieved employees who are subject to an allegedly unlawful policy or plan.'" *Contreras*, 2017 WL 663560, at *6 (quoting *Villareal v. St. Luke's Episcopal Hosp.*, 751 F. Supp. 2d 902, 917 (S.D. Tex. 2010)).

The Court should reject, for the reasons explained above, TDT Consulting's sole argument that this element is not satisfied because the evidence is inadmissible. *See* Dkt. No. 12 at 8. As in *Contreras*, "Plaintiff could reasonably have gained personal knowledge of their coworkers' work conditions over the course of two years working with them, and in any event, the court considers Plaintiffs' hearsay evidence at this stage of the litigation." 2017 WL 663560, at *6.

Accordingly, this element is satisfied.

## B.    Similarly Situated

For many of the same reasons as explained in the aggrieved individual element,

Cervantez's allegations that the putative class members are similarly situated also prevail.

TDT Consulting's sole argument, again, is that the second element is not met because Cervantez's evidence in his declaration was inadmissable evidence. *See* Dkt. No. 12 at 8. But Cervantez has proffered sufficient evidence to show that the other solids control technicians are similarly situated to him. Having spoken with them and observed their work while working alongside them, Cervantez contends that they are similarly situated because they have the same title; perform the same tasks of "remov[ing], clean[ing], measur[ing], load[ing], and transport[ing] cuttings, as well as maintain[ing] and clean[ing] the equipment used to remove the cuttings during the drilling process"; were all "responsible for maintaining [TDT Consulting, LLC's] solid control equipment, the rigging up and out of company equipment at the client's well-site/jobsite, dewatering, and centrifuge support"; all "worked twelve (12) or more hours in a single day for a period of up to fourteen (14) consecutive days in a row" for a daily rate of $350; were not compensated for "any hours worked in excess of forty (40) per week – including time spent driving," despite regularly working more than forty hours in single workweek; and were all "not paid at the correct rate of "one-and-one-half times their regular rate" under the FLSA because of TDT Consulting, LLC's common plan to "misclassif[ing] solids control technicians as independent contractors instead of employees." Dkt. No. 1 at 1-2; Dkt. No. 10 at 4-5.

As such, Cervantez has shown that the solids control technicians putative class members were "victims of a single decision, policy, or plan," *Mooney*, 54 F.3dd at 1214

n.8 (citing *Sperling v. Hoffman-LaRoche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988), and that they satisfy this element because they were "similar situated in terms of job requirements and similarly situated in terms of payment," *Prater v. Commerce Equities Mgmt. Co.*, No. Civ. A. H-07-2349, 2007 WL 4146714, at *5 (S.D. Tex. Nov. 19, 2007). And "[a] plaintiff need only demonstrate a reasonable basis for the allegation that a class of similarly situated persons exist." *Lima v. Int'l Catastrophe Solutions, Inc.*, 493 F. Supp. 2d 793, 798 (E.D. La. 2007).

Accordingly, this element has been satisfied. And this recommendation is based on a reading of the briefing and allegations in this case that the putative class of "consultants or solid control technicians" identified in Cervantez's motion, *see* Dkt. No. 10 at 2, are one-in-the-same people, listed as solids control technicians – because that is their job title – and consultants – because that is their function in being sent out to other businesses.

### C.    Desire to Opt In

The final element at issue is whether Cervantez can show that similarly aggrieved individuals want to opt in. Cervantez satisfies the lenient standard on this element, which is necessary under the three-element approach but not under the two-element framework.

TDT Consulting again asserts its overarching inadmissibility argument and also argues that the absent third factor is necessary to secure conditional certification. *See* Dkt. No. 12 at 8. It argues that Cervantez has "provided no evidence, whether

inadmissable or not, concerning the third prong," and, as such, fails in his motion. *Id*.

Cervantez asserts that, in the *Walker* decision that TDT Consulting uses to argue that the desire to opt in is necessary, the court actually found that the plaintiff's assertions that "individuals would likely seek to opt in" was sufficient to meet the standard, Dkt. 15 at 10, and that, under this standard – also adopted in *Dyson* and *Reid v. Timeless Rests Inc.*, No. 3:09-cv-2481-L, 2010 WL 4627873, at *3 (N.D. Tex. Nov. 5, 2010) – Cervantez's declaration "based on his personal knowledge, that he is aware of other solids control technicians who ... would join a collective action to recover their unpaid wages, if provided with notice of this lawsuit," would satisfy this element. Dkt. 15 at 11.

Based on the "fairly lenient standard" in the notification stage, and the fact that in the interim John Luthe filed a consent form to become a party-plaintiff, *see* Dkt. No. 14, the undersigned agrees, *see Mooney*, 54 F.3d at 1214. Even courts that strictly require all three elements liberally construe the third because of the infancy of the claim and the ability to revisit the issue at a later stage. *See Tolentino*, 716 F. Supp.2d at 653 (noting that, although minimal, only two declarations of similarly situated individuals was sufficient to demonstrate the desire to opt in, since if no similarly situated are ultimately found, the "issue may be raised at the decertification stage"); *Reid*, 2010 WL 4627873, at *3 (holding that the element was met where one other person filed a notice of consent to join the collective action and the plaintiff "identified other putative members of the class" in his declaration); *Dyson*, 308 F.R.D. at 513-14

("Plaintiff has presented at least some evidence of other plaintiffs. Namely, in their declarations, both Plaintiff and Garvey aver that other flow testers were subject to the same working and pay conditions as they were, and state their belief that other flow testers may be interested in joining the lawsuit should it be certified as a collective action. The Court finds this sufficient to carry Plaintiff's burden at this early stage.").

Here, as in *Reid* and *Dyson*, Cervantez attested in his declaration that others "would join a collective action to recover their unpaid wages, if provided with notice of this lawsuit." Dkt. 15 at 11. In the time since, John Luthe has filed a consent form to become a party-plaintiff. *See* Dkt. No. 14. Although Cervantez and Luthe did not detail any other potential plaintiffs, courts that requirement as showing as to the three elements have accepted less in the way of evidence and still granted the conditional certification. *See Prater v. Commerce Equities Mgmt.* Co., No. Civ. A. H-07-2349, 2007 WL 4146714, at *8 (S.D. Tex. Nov. 19, 2007) ("Although the plaintiffs present no affidavits from other apartment office employees expressing an interest in opting in, this is not fatal to the issuance of notice."); *Lima*, 493 F. Supp. 2d at 799 (reasoning that even though the plaintiffs did not provide any affidavits of similarly situated employees wishing to opt in, "[i]t seems appropriate to certify the collective action at this time and revisit the question later after some discovery"); *Neagley v. Atascosa Cty. EMS*, No. CIV.A.SA04CA0893XR, 2005 WL 354085, at *3 (W.D. Tex. Jan. 7, 2005) (noting that a plaintiff's motion that did "not provide any affidavits as to the names of other similarly situated employees" was "likely at the outer bounds of what should be

presented to the Court when initiating a collective action – which should normally contain some evidence," was still sufficient to grant conditional certification); *Hayes v. Laroy Thomas, Inc.*, No. 5:05CV227, 2006 WL 1004991, at *7 (E.D. Tex. Apr. 18, 2006) ("Plaintiffs have not presented affidavits from potential plaintiffs. However, the Court finds Plaintiffs have made a preliminary factual showing that a similarly situated group of potential plaintiffs exist. The Court finds the evidence is sufficient to meet the fairly lenient standard for giving of notice to potential class members.").

For these reasons, Cervantez has satisfied the third element.

Because Cervantez has met both the two- and three-element standards, the Court should grant his conditional certification.

## III.    Notice

Having recommended that conditional certification is appropriate in this case, the undersigned next considers whether Plaintiff's proposed notice is proper. *See Tolentino*, 716 F. Supp. 2d at 655. "The benefits of a collective action 'depend on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate.'" *Behnken v. Luminant Min. Co., LLC*, 997 F. Supp. 2d 511, 523 (N.D. Tex. 2014) (quoting *Hoffmann-La Riche Inc.*, 493 U.S. at 169). As such, courts should "exercise their discretion regarding the form and content of the notice so as to ensure that the notice is accurate and that it includes information that would be needed to make an informed decision about whether to join the lawsuit." *Id.*

## A.    Distribution of Notice

Cervantez requests leave to send a Notice to all solids control technicians via mail, email, text message, and Facebook and LinkedIn messages. *See* Dkt. No. 10 at 13-14. And Cervantez "also requests that the Court order Defendant to post a Notice of Collective Action in a conspicuous and accessible location at each of its places of work at which it currently employs one or more potential Class Members" and that "Defendant be ordered to distribute the Notice and Consent form with paychecks or notices of direct deposit of all current employee Class Members." *Id*. at 15. Finally, Cervantez seeks permission for his counsel to be permitted to maintain a website dedicated to posting the Notice and Consent Form and "requests that the potential opt-in plaintiffs be afforded the opportunity to electronically sign their consent forms from that website." *Id*. Cervantez argues that, because the putative class members are "dispersed to non-centralized and remote worksites throughout Texas and other states where they spend long hours away from their residences," this array of notice methods is reasonable. *Id*. at 14.

TDT Consulting does not object to Cervantez's proposed distribution methods.

While some courts have embraced the use of social media as a method of notice, *see, e.g.*, *Joaquin v. Hinojosa*, 219 F. Supp. 3d 582, 586 (W.D. Tex. 2016), the undersigned recommends that the Court adopt the rationale in *Contreras* in denying parties' requests to distribute the Notice over Facebook and LinkedIn. 2017 WL 663560, at *8. The court in *Contreras* denied the plaintiff's request to send the notice

via Facebook because, although the class could have been more difficult to reach than usually expected, the plaintiff had not shown that any of the other proposed methods were insufficient to necessitate the need for social media. *Id*.

Aside from that recommended exclusion, because TDT Consulting has not objected to any of the other methods or shown them to be unduly burdensome, the Court should grant Cervantez's request to distribute the Notice through mail, email, text message, posting at the workplace, posting online at the noted website, and inclusion in current employee's paychecks. And the Court should grant Cervantez's request potential opt-in plaintiffs be afforded the opportunity to electronically sign their consent forms from the proposed website.

## B.    Content of Notice

Cervantez attaches copies of the proposed Notice and consent form, *see* Dkt. No. 11-1, Ex. C, Social Media Notice; Dkt. No. 11-1, Ex. D, and proposed text message Notice, *see* Dkt. No. 11-1, Ex. E.

TDT Consulting does not object to the content of Cervantez's proposed Notice.

On review, the undersigned finds the current content not yet suitable for distribution and recommends that Court order that changes be made.

First, the Notice should inform potential class plaintiffs that they may contact any attorney of their choosing to discuss the case. *See Moran v. Ceiling Fans Direct, Inc.*, No. H-06-0813, 2006 U.S. Dist. LEXIS 72586, *4-5, 2006 WL 2868939 (S.D. Tex. Oct. 5, 2006) ("The potential class needs to be aware that ... they may contact and discuss this matter with any attorney of their choosing.").

Second, the Notice should contain a brief explanation of TDT Consulting's bases for disputing liability. *See Yaklin v. W-H Energy Servs.*, Inc., No. CIV. A. C-07-422, 2008 WL 1989795, at *4 (S.D. Tex. May 2, 2008).

Third, the Notice should inform the reader that he or she may be required to pay a proportional share of taxable court costs if the plaintiffs receive an unfavorable decision. *See Behnken*, 997 F. Supp.2d at 524.

Finally, the proposed Notice does not – but should – advise parties that, in joining the lawsuit, they may be required to give a deposition, respond to written discovery, and testify in court. *See id*.

The undersigned recommends that the Court order Cervantez to submit an edited proposed Notice for the Court's review two weeks from entry of any order granting Cervantez's motion for conditional certification. The date of approval of the revised proposed Notice would then constitute the date from which TDT Consulting, LLC's obligation would run on the production of information.

### C.    Consent to Join FLSA Lawsuit

Cervantez has attached a proposed Consent to Join FLSA Lawsuit form. *See* Dkt. No. 11-1, Ex. C.

TDT Consulting does not object to Cervantez's proposed form.

The undersigned finds that the Consent to Join FLSA Lawsuit form is sufficient as written and recommends that the Court authorize Cervantez to disseminate the form.

### D.    Production of Information for Notice Distribution

Cervantez also "requests that Defendant be ordered to produce within ten (10) days of the granting of this [m]otion an Excel file containing the names, all known addresses, all email addresses, and all telephone numbers (home, mobile, etc.) of all the potential opt-in plaintiffs," asserting that "[t]elephone numbers will be used only for text message notice." Dkt. No. 10 at 13.

TDT Consulting does not object to Cervantez's request.

Courts have routinely ordered employers to produce such information for the purpose of transmitting a Notice. *See Eggelston v. Sawyer Sportsbar, Inc.*, No. CIV. A. 4:09-3529, 2010 WL 2639897, at *4 (S.D. Tex. June 28, 2010) (ordering the production of names, last-known addresses, email addresses, and telephone numbers in order to facilitate the notification process). Mobile phones, too, fall within the scope of what courts have found these to be acceptable forms of notice communication. *See Contreras*, 2017 WL 663560, at *8 (allowing the plaintiff to even call class members once to ensure receipt of the notice).

As such, the undersigned recommends that the Court grant Cervantez's request.

### E.    Length of Mailing and Opt-In Period

As to the mailing and notice period, Cervantez asks the Court for 30 days from the date of receiving the contact information to send the Notice to putative class members. *See* Dkt. No 10-1 at 3. Cervantez then "requests a sixty (60) day opt-in period from the date of initial mailing and emailing," for the putative class member to respond to the notice. Dkt. No. 10 at 15. After 30 days from mailing, Cervantez seeks

permission to "send a reminder that is identical to the original notice by mail, email, Social Media, and text message to all Class Members." *Id.*

TDT Consulting does not object to Cervantez's request.

The undersigned finds that a 30-day preparatory period and 60-day opt-in period from the date of mailing, with a follow-up communication after 30 days, is adequate. This period sufficiently affords Cervantez's attorneys the time needed to locate potential opt-in plaintiffs who may be traveling for work, but is not so unreasonable as to be overly burdensome or excessive for TDT Consulting. The undersigned recommends that the Court grant this request, with the start date for the 60-day window set to the initial date of mailing.

## IV.    Equitable Tolling

Finally, Cervantez requests that this Court "toll the limitations period for any opt-in class member from the date of the Plaintiff's Original Complaint – September 25, 2018 – until the notice and opt-in period is concluded." Dkt. No. 10 at 12.

The applicable statute of limitations period under the FLSA is outlined in 29 U.S.C. § 255. Section 255 provides that an action must commence within two years after the cause of action accrued if the violation is "unwillful" and within three years after it accrued if the violation was "willful." *Id.* A cause of action "begins to accrue at each regular payday immediately following the work period during which the services were rendered for which the wage or overtime compensation is claimed." *Halferty v. Pulse Drug Co.*, Inc., 821 F.2d 261, 272 (5th Cir.1987), *modified on other grounds*, 826 F.2d 2 (5th Cir. 1987). In a collective action, the action is "commenced" in the case of

-26-

an opt-in plaintiff on the date a written consent is filed. *See Lima*, 493 F. Supp. 2d at 803 (citing *Atkins v. General Motors Corp.*, 701 F.2d 1124, 1130 n. 5 (5th Cir.1983)).

But, as the court in *Blundell v. Home Quality Care Home Health Care, Inc.* noted, "[t]he United States Court of Appeals for the Fifth Circuit 'strictly construes the FLSA's limitations provision, allowing equitable tolling only' in limited circumstances." No. 3:17-cv-1990-L-BN, 2018 WL 276154, at *5 (N.D. Tex. Jan. 3, 2018) (quoting *Orozco v. Anamia's Tex-Mex Inc*, No. 3:15-CV-2800-L-BK, 2016 WL 6311237, at *3 (N.D. Tex. Oct. 6, 2016), *rep. & rec. adopted sub nom. Orozco v. Anamia's Tex-Mex Inc.*, 2016 WL 6277843 (N.D. Tex. Oct. 27, 2016)).

Cervantez has not pointed to any established rare and exceptional circumstances to justify granting his requested equitable tolling, other than the passage of time while the Court decides the motion. But "Congress did not provide for tolling while a court considers whether to certify a case as a collective action under the FLSA." *McKnight v. D. Houston, Inc.*, 756 F. Supp. 2d 794, 808 (S.D. Tex. 2010). Instead, "Congress 'expressed concern that an opt-in plaintiff should not be able to escape the statute of limitations bearing on his cause of action by claiming that the limitations period was tolled by the filing of the original complaint.'" *Id.* (quoting *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1106 (11th Cir. 1996)). And courts in the Fifth Circuit have denied such tolling requests for similar or longer periods between the time the motion was filed and the decision was issued. *See, e.g., Clay v. Huntington Ingalls, Inc.*, No. 09–7625, 2012 WL 860375, at *4 (E.D. La. Mar. 13, 2012) (rejecting equitable tolling of FLSA claims

when a motion for conditional certification was pending for over a year); *Rodriguez v. Gold & Silver Buyers, Inc.*, No. 12-1831, 2013 WL 5372529, at *8 (S.D. Tex. Sept. 24, 2013) (rejecting equitable tolling of FLSA claims when a motion for conditional certification was pending for eight months).

The undersigned recommends that the Court deny Cervantez's request for equitable tolling.

## Recommendation

For the reasons explained above, the Court should overrule Defendant's Objection [Dkt. No. 12] and grant in part and deny in part Plaintiff's Motion for Expedited Conditional Certification of Collective Action and Judicially-Supervised Notice Under Section 216(b) [Dkt. No. 10]. Specifically, the undersigned recommends that the Court conditionally certify the case as a collective action but deny Plaintiff's request for equitable toling. In addition the undersigned recommends that the Court grant Cervantez's request to distribute the Notice through mail, email, text message, posting at the workplace, posting online at the proposed website, and inclusion in current employee's paychecks; grant Cervantez's request that potential opt-in plaintiffs be afforded the opportunity to electronically sign their consent forms on the proposed website; deny Cervantez's request to use Facebook and LinkedIn as a method for notice delivery; deny Cervantez's request to use the current Notice and order him to submit an edited Notice to potential class members for the Court's review; grant Cervantez's request for production of information; and grant Cervantez's proposed mailing and opt-in dates.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: July 22, 2019

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE